UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ENVIROMETRIC PROCESS CONTROLS, INC.                                                    PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:12CV-62-S

ADMAN ELECTRIC, INC.                                                                    DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on motion of the defendant, Adman Electric, Inc., to dismiss the action for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2).

Adman has moved for dismissal on the ground that this court lacks personal jurisdiction over it. The plaintiff bears the burden of establishing personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (*citing Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)). While the district court may hold an evidentiary hearing to determine whether or not jurisdiction exists, it need not do so; in that case the plaintiff "need only make a prima facie showing of jurisdiction," *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996), establishing the necessary facts with "reasonable particularity." *Neogen*, 282 F.3d at 887 (*quoting Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Without a hearing the court may not "consider facts proffered by the defendant that conflict with those offered by the plaintiff," *id.* (*citing Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)), and "must consider the pleadings and affidavits in a light most favorable to the plaintiff," *Compuserve*, 89 F.3d at 1262 (*citing Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

A federal district court can exercise jurisdiction over any person subject to the jurisdiction

of the state in which it sits. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 148 (6th Cir. 1997). In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Due Process Clause imposes constitutional limits on this jurisdiction, and Kentucky's long-arm statute, KRS 454.210, and has been interpreted, until recently, as reaching the outer limits of what federal law allows. (*See, Cummings v. Pitman*, 239 S.W.3d 77, 84 (Ky. 2007), *overruled, Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.2d 51 (Ky. 2011)). However, the Kentucky Supreme Court has refined the inquiry into personal jurisdiction:

> [T]he proper analysis of long-arm jurisdiction over a nonresident defendant must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars*, 336 S.W.3d at 57.

Personal jurisdiction may take one of two forms. "General jurisdiction" attaches upon "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Kerry Steel*, 106 F.3d at 149. Alternatively, "specific jurisdiction" can be premised on as little as a single event or transaction in the forum state, provided the claims at issue "'arise out of or relate to' a defendant's contacts with the forum." *Id.* (*citing Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414-415 & nn.8-10 (1984)). In this action, the plaintiff urges that the court has specific jurisdiction over Adman.

The plaintiff, Envirometric Process Controls, Inc. ("EPC"), is a Kentucky corporation engaged in providing engineering services primarily to automobile manufacturers. (Pl.Resp., DN 9, p. 2). Its principal place of business is Louisville, Kentucky. *id.* The following facts have been gleaned from the Complaint, affidavits, and briefs, and are considered in a light most favorable to EPC.

On April 8, 2011, EPC entered into a contract with Volkswagen Group of America Chattanooga Operations, LLC ("VW") for the construction of conveyors at VW's assembly plant in Tennessee. The project was to run from June 13, 2011 to August 31, 2011.

The defendant, Adman Electric, Inc. ("Adman"), is a Tennessee corporation licensed to do business in Tennessee, Georgia, Alabama, North Carolina, and South Carolina. Adman is an electrical contractor, employing over 200 electricians.

Adman learned that EPC was bidding on the contract at VW, and notified EPC that it was interested in bidding on the electrical subcontract for the project. Adman was apparently already performing work at the Tennessee plant under other contracts. Adman negotiated for the work, and EPC awarded the subcontract to Adman.

The subcontract required Adman to provide electrical installation services and materials for the construction of three conveyors at the Tennessee plant. Adman was to perform its work on a "time and materials" basis, with the agreement that Adman would charge a 5% markup on materials.

The subcontract required Adman to complete its work at the plant by August 31, 2011. EPC claims that Adman failed to adequately staff the job and did not complete its work until December 1, 2011. EPC further alleges that Adman's work was substandard and required numerous corrections. Adman allegedly refused to correct its work unless EPC agreed to pay for the additional

time and materials that would be required to do so.

EPC also alleges that Adman overcharged for the job, marking up its materials by 15%. EPC claims breach of contract, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose.

In accordance with *Caesars*, *supra.*, and its progeny, the first inquiry is whether Adman's conduct fits into one of the categories enumerated in KRS 454.210. EPC states that Adman's actions constituted the transacting of business in Kentucky because it negotiated for the subcontract via email and telephone calls made to Kentucky, and was subsequently awarded the job by EPC. However, EPC does not dispute that Adman is not licensed to do business in Kentucky and has no physical presence in the Commonwealth. The negotiations for this single contract is the sum total of Adman's contacts with this jurisdiction.

In *Caesars*, mass media and billboard advertising in Kentucky, direct mail advertising to Kentucky residents, preferred customer incentives directed to Kentucky residents, and substantial civic and charitable activities in the Commonwealth were sufficient to constitute "transacting business" in Kentucky. *Id.* at 58.

George Campbell, President of EPC, has stated that there were "numerous" email messages and telephone calls from Adman seeking details concerning the subcontract. He references "Exhibit 1" to his affidavit, however, which offers only a couple of May 5 and 6, 2011 emails and makes reference to one April 14, 2011 telephone call concerning the Tennessee job. In any event, it appears to have been approximately one month from the time Adman first contacted EPC and the date Adman was awarded the job. By contrast with *Caesars*, the parties in this case negotiated one subcontract for a job to be performed entirely in Tennessee at the VW plant.

We do not find that Adman has purposefully availed itself of the privilege of doing business in Kentucky such that it may be said to be "transacting business" here. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* (citations omitted). While "even a single act by defendant directed toward [the forum state] that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process," *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (*citing Calder v. Jones*, 465 U.S. 783 (1984)), we do not find that this is such a case.

The United States Court of Appeals for the Sixth Circuit has held that acts as apparently insubstantial as "phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Neal*, 270 F.3d at 332 (*citing Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 282 (7th Cir. 1990)). But the phone calls and emails referred to by EPC do not form the basis of the claims in this action. The communications were simply the prelude to the formation of a contract which was allegedly required to be performed and was purportedly breached in Tennessee. Further, periodic communications with EPC regarding the performance of the contract in Tennessee should not subject Adman to the jurisdiction of this court, without more. In *Tube Turns Div. of Chemtron Corp. v. Patterson Co.*, 562

S.W.2d 99 (Ky.App. 1978), the court found that "it would be unreasonable for Kentucky to exercise jurisdiction over Patterson solely on the basis of negotiations by telephone and email that culminated in the acceptance of a single order in Louisville. *Id.* at 100.

Alternatively, were we to find that Adman's contacts were sufficient to constitute the transaction of business in Kentucky, we must conclude that EPC's claims do not "'arise from' the statutory provision upon which long-arm jurisdiction is predicated." *Caesars*, 336 S.W.3d at 58.

In defining "arising from," the court in *Caesars* stated that "If there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction, then jurisdiction is properly exercised." *Id.* at 59. The court found that the wrongful conduct ha[d] no relation at all to the business [Caesars] transact[ed] in this Commonwealth. That is, there [was] no reasonable and direct nexus between [Caesars'] marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced [the Kentucky resident's] fall [on the Indiana casino's premises]." *id.* In the case at bar, there is no reasonable and direct nexus between the phone calls and emails which purportedly constituted Adman's transaction of business in Kentucky and Adman's alleged failure to properly staff the Tennessee project, perform adequate work, or properly bill for its services and materials.

Again, even if we KRS 454.210(2)(a)(1) was satisfied, the court would still conclude that the exercise of jurisdiction over Adman in this circumstance is not reasonable. As stated in *Hinners v. Robey*, 336 S.W.3d 891 (Ky. 2011),

> These cases [involving a single contract between a resident buyer and a nonresident seller] have resulted in the development of the well-settled point that a single contract touching upon the forum state will not, standing alone, subject the defendant to jurisdiction. *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174. ("If the question is

- 6 -

> whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Thus, in the usual case, a single contract with a nonresident, whether buyer or seller, and regardless of their method of interaction, will not justify jurisdiction over the defendant.

*Hinners*, 336 S.W.3d at 901. The court finds that this is a garden variety single-contract case. The nonresident defendant subcontracted for work to be performed wholly outside of Kentucky. The only contact of any sort with the Commonwealth was the initial negotiations for the job followed by periodic contact concerning the out-of-state performance. The court concludes that the exercise of personal jurisdiction over Adman would offend the "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). The action must therefore be dismissed without prejudice for lack of personal jurisdiction. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

September 11, 2012

**Charles R. Simpson III, Judge**
**United States District Court**